UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CANOPIUS US INSURANCE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:16-cv-154 RLM-SLC ) |
| YANHOS, INC., *et al.*, | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Whether Canopius US Insurance must cover a bar's liability for a brawl depends on whether the insurance broker was Canopius's agent. There isn't enough evidence for a jury to conclude that he was Canopius's agent, and so Canopius has no coverage obligations and the court grants its motion for summary judgment.

I. BACKGROUND

This is a dispute over whether Canopius has any obligation to provide insurance coverage for, to defend against, or to indemnify for losses related to a fight at the Hideaway Bar & Grill. There's discrepancy about who started the fight. All agree, though, that bar employee Tequilla Hoskins punched Jordan Funk in the face, breaking her nose. Ms. Hoskins was then convicted of battery.

Ms. Funk sued in Grant Superior Court I. She sued Ms. Hoskins for breaking her nose and the related medical expenses, pain, anguish, and emotional distress. She also sued Yanhos, Inc., which owns the Hideaway, and

Charles Hoskins and Rudolph Yanis, who own Yanhos. She claimed they had inadequate security at the bar and inadequate control over their employees.

Canopius is Yanhos's commercial general liability insurer. Canopius sued Yanhos, Ms. Hoskins, Mr. Yanis, Mr. Hoskins, and Ms. Funk in this court for a declaration that Canopius has no obligation to cover Ms. Funk's claims, and that it has no duty to defend or to indemnify Yanhos, Mr. Yanis, Mr. Hoskins, or Ms. Hoskins against or for Ms. Funk's claims. The court already has entered default judgments against Ms. Hoskins and Ms. Funk. Canopius now seeks summary judgment against Yanhos, Mr. Yanis, and Mr. Hoskins. The court heard oral argument on July 6, 2017.

The defendants don't dispute whether liability from the fight falls beyond Canopius's written coverage obligations.[1] They parry that Canopius misrepresented their coverage to include bar-fights. Whether Canopius did this depends on how the Canopius insurance policy was sold to Yanhos.

John Burnette sold Canopius insurance to Yanhos. He considers himself an independent insurance agent. Mr. Burnette doesn't have direct contractual relationships with insurers that cover high-risk customers, such as bars. Instead, he goes through a managing general agent to procure policies for these customers. The customer fills out the application, Mr. Burnette passes it on to the managing general agent, the managing general agent obtains quotes from

---

[1] By its terms, the policy clearly doesn't cover this liability. The policy provides no coverage or duty to defend, for "'bodily injury' . . . arising out of, caused by or contributed to . . . from criminal acts . . . by any insured, [or] any employee . . . of any insured." It also excludes coverage for "any claim, suit, cost or expense arising out of assault and/or battery," and "charges or allegations of negligent hiring, training, placement or supervision."

2

different insurance companies, and Mr. Burnette then presents one or more quotes to the customer.

Mr. Burnette worked with Mr. Hoskins to obtain insurance for the Drunken Chicken, a different bar that Mr. Hoskins used to operate. In his deposition, Mr. Burnette said that when he sold the policy for the Drunken Chicken, he explained to Mr. Hoskins that the policy didn't cover altercations. He said that commercial general liability policies always exclude assault and battery claims. He said they discussed the fact that Mr. Hoskins wasn't buying a liquor liability policy for the Drunken Chicken. Mr. Burnette later clarified in his affidavit that the Drunken Chicken policy had limited liability coverage for assault and battery, but no liquor liability coverage. Mr. Hoskins said he remembered asking Mr. Burnette for coverage for everything, including bar fights, for the Drunken Chicken.

Mr. Burnette and Mr. Hoskins worked together again to insure the Hideaway. Mr. Burnette says he explained the insurance options for the Hideaway similarly to the way he did for the Drunken Chicken. Mr. Burnette said he obtained a quote for a liquor liability policy, but because of the price, Mr. Hoskins opted for a general commercial liability policy, which excludes assault and battery claims. Mr. Hoskins recalls it differently: he says he remembered asking for coverage for everything at the Hideaway, just like he did with the Drunken Chicken, and that when he picked up the policy, Mr. Burnette explained that it provided coverage for everything Mr. Hoskins wanted.

In his affidavit, Mr. Burnette explained that because the Hideaway offered food and drink, it was a low enough risk to qualify for Canopius insurance. The Drunken Chicken only sold drinks. This made its policy significantly more expensive, but that more expensive policy also included limited liability coverage for assault and battery.

Mr. Burnette doesn't have a contract with Canopius. Roush Insurance Services was the managing general agent that provided Mr. Burnette with an insurance quote for the Hideaway. Mr. Burnette gave Mr. Hoskins's application to Roush. Roush then obtained quotes from Canopius and Scottsdale Insurance Company. Roush determined that Canopius had the best policy, and sent Mr. Burnette the Canopius quote to present to Mr. Hoskins. Because the Canopius policy's rate was substantially better than the Scottsdale policy's rate, Mr. Burnette presented only the Canopius policy to Mr. Hoskins, and that's what Mr. Hoskins purchased.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; <u>Protective Life Ins. Co. v. Hansen</u>, 632 F.3d 388, 391-392 (7th Cir. 2011). The evidence and all inferences that reasonably can be drawn from it must be construed in the light most favorable to the non-moving parties. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). As the moving party, Canopius

bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If Canopius meets that burden, the defendants can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [their] favor." Marr v. Bank of Am., N.A., 662 F.3d 963, 966 (7th Cir. 2011); Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events").

III. DISCUSSION

The defendants argue that there's at least a genuine issue as to whether Mr. Burnette was acting as Canopius's agent when he sold insurance to Mr. Hoskins. And if so, they argue that there's a genuine issue as to whether he promised Mr. Hoskins insurance that would cover Ms. Funk's claims. If both of these are true, they argue that Mr. Burnette's misrepresentations estop Canopius from arguing that the policy doesn't cover Ms. Funk's claims.

The scope of an insurance contract is generally limited to the four corners of the document. But there are two exceptions for estoppel or waiver. First, "where an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the

5

disputed risk." Transcontinental Ins. Co. v. J.L. Manta, Inc., 714 N.E.2d 1277, 1281 (Ind. Ct. App. 1999), *quoted in* Conley v. State Farm Fire & Cas. Co., No. 3:13-cv-141, 2015 WL 1486844, at *6 (N.D. Ind. Mar. 31, 2015); Filip v. Block, 879 N.E.2d 1076, 1084 (Ind. 2008) ("[R]easonable reliance upon an agent's representations can override an insured's duty to read the policy."). Second, when "an insurer defends an action on behalf of an insured, with knowledge that would provide a defense to coverage, but without a reservation of rights." Transcontinental Ins. Co., 714 N.E.2d at 1281. Only the first is relevant to the Canopius policy.

For the defendants to benefit from that exception, they must be able to show that Mr. Burnette acted on behalf of the insurer and that he misrepresented the extent of coverage. "In general, an insurer is not liable for the acts of an insurance agent who is merely a broker." Benante v. Union Pac. Life Ins. Co., 659 N.E.2d 545, 547-548 (Ind. 1995). Whether an insurance broker is an insurance company's agent depends on many factors, including whether: the broker represents numerous insurance companies, he applied for the product for the customer, he has a contract with the insurer, he introduced himself as the insurer's agent, he uses insurance company policy forms and letterhead, the customer paid him after signing up for the policy, and the insurance company controls his actions. *See id.* at 548; Estate of Mintz v. Conn. Gen. Life. Ins. Co., 905 N.E.2d 994, 1000-1001 (Ind. Ct. App. 2009). "[I]n Indiana when a broker makes application for insurance and the insurance policy is issued, the broker

is the agent of the insurer and can bind it within the scope of his authority." Aetna Ins. Co. v. Rodriguez, 517 N.E.2d 386, 388 (Ind. 1988).

Most factors weigh in favor of Mr. Burnette's independence. He sells insurance for numerous companies. He has no contract with Canopius. When finding insurance for high-risk clients, such as bars, he deals only with a managing general agent, in this case Roush. There's no evidence that Mr. Burnette held himself out as an agent for the insurer, or that he uses insurance company policy forms or letterhead. There's no evidence that Canopius controlled Mr. Burnette's actions or that it interacted with Mr. Burnette at all.

On the other side, Mr. Burnette took Mr. Hoskins's application and applied for insurance on Mr. Hoskins's behalf. Even though Mr. Burnette sent the application to Roush, not Canopius, it was Mr. Burnette who submitted it, not Mr. Hoskins. This last factor might be enough on its own for Mr. Burnette to "bind [Canopius] within the scope of his authority." Aetna Ins. Co. v. Rodriguez, 517 N.E.2d 386, 388 (Ind. 1988). But that matters only to the extent that Canopius authorized Mr. Burnette to do anything on its behalf. Without evidence of such authorization, who submitted the application holds little weight.

Whether an agency relationship exists is a fact-intensive inquiry. But there must be some relationship between the insurance broker and the insurer for him to bind the insurer to his own representations. *See* Benante v. Union Pac. Life Ins. Co., 659 N.E.2d 545, 547-548 (Ind. 1995) (holding that summary judgment for insurer was inappropriate in a case where, among other factors, insurance agent and insurer had a contract); Estate of Mintz v. Conn. Gen. Life. Ins. Co.,

905 N.E.2d 994, 1000-1001 (Ind. Ct. App. 2009) (holding that an insurance broker wasn't the insurer's agent because, among other reasons, they had no contract). "[T]here is . . . no liability when an agent exceeds his or her authority under an agency agreement . . . ." 4 Steven Plitt, Daniel Maldonado & Joshua D. Rogers, Couch on Insurance § 56:2 (3d ed. 2011). But there's no agency agreement to confer actual authority. "Apparent authority to bind an insurer must be conferred by the actions of the insurer . . . , which would induce third persons to believe that the agent had authority." 3 *id.* § 48:12. And there's no evidence that Canopius exerted any control over Mr. Burnette or that Canopius even knew of Mr. Burnette. There's no basis for apparent authority either.

Without contract, relationship, or control, nothing shows that Canopius authorized Mr. Burnette to expand policy coverage beyond the written policy, or that Canopius is on the hook for any misrepresentation Mr. Burnette might have made. Without the benefit of estoppel or waiver, the defendants are bound to the policy as written, which offers no coverage here.

IV. CONCLUSION

Based on the foregoing, the court:

(1) GRANTS Canopius's motion for summary judgment [Doc. No. 34];

(2) DENIES AS MOOT Canopius' motion to strike [Doc. No. 40];

(3) DECLARES that Canopius has no obligation to Yanhos, Mr. Hoskins, or Mr. Yanis to cover, to defend against, or to indemnify for Ms. Funk's claims;

(4) VACATES the trial on August 29, 2017; and

(5) DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED: July 10, 2017

      /s/ Robert L. Miller, Jr.
Judge
United States District Court